JAMES T. WATSON, Respondent, *v.* ELIZABETH P. KING, as Surviving Executrix, etc., of ABRAHAM P. GRANT, Deceased, Appellant.

*Agreement to divide the " avails of sales," construed to include rents — parties to an action for an accounting.*

An agreement made between the executors of Abraham P. Grant, deceased, and John W. P. Allen, who had been interested with Grant in real estate operations, provided, among other things, that Allen should be equally interested with the executors in the "avails of any sales" of certain land, the title to which was in Grant's name, and thereafter the successor in interest of Allen brought an action against the surviving executor of Grant for an accounting under the agreement.

*Held,* that, taking all the provisions of the agreement together, in the light of the surrounding circumstances, the expression "avails of any sales" was intended to include all the proceeds of the property, and, hence, that the plaintiff was entitled to share in the rents and profits of the property realized prior to its sale;

That the administrator of one of the executors, deceased since the making of the agreement, who had recovered a judgment against Allen upon a note given by

him to such deceased executor individually, for a personal matter wholly out-side of the agreement in suit, was not (in the absence of a claim by such admin-istrator) a necessary party defendant.

APPEAL by the defendant, Elizabeth P. King, as surviving execu-trix of Abraham P. Grant, deceased, from a judgment of the Supreme Court, entered in the office of the clerk of Oswego county on the 29th day of August, 1892, upon the report of a referee.

Action was brought for an accounting.

The controversy in this case was over an agreement made the 14th of July, 1873, between the executors of the last will and testament of Abraham P. Grant, deceased, of the first part, and John W. P. Allen of the second part. The plaintiff is the owner of what-ever rights John W. P. Allen had on the 15th of June, 1877. The defendant is the sole surviving executor of the will of Grant.

Grant died in December, 1871, leaving a will, in and by which he devised all his property, real and personal, to his three children, Mary B. Grant, Josephine L. Hosmer and Elizabeth P. King, in equal shares, and appointed them, together with William F. Allen, his executors, with full power to sell and convey, lease, exchange or otherwise dispose of any of his real estate, upon such terms and conditions as they might deem proper, at public or private sale. John W. P. Allen had business relations with Grant during his lifetime, and after his death differences arose between Allen and the executors of Grant relative to the interests of Allen in certain real estate, the title to which was in Grant at the time of his death, and in which Allen claimed to have an interest. Thereupon, after some negotia-tions, the agreement in question was executed. It is under seal, and it was conceded at the trial that the executors, as such, had full power to make it.

By the first clause of the agreement, the parties of the first part released and discharged the party of the second part from all claims which they, as executors, had against him, or which was due from him to Grant in his lifetime, for money lent or advanced to him or for his benefit, including all accounts and notes against him, and also the amount due on a certain real estate contract. By the second clause, the party of the second part released and discharged the executors and the estate of Grant from all claims and demands of every name and nature, and released all his interest in a certain

mortgage given to Grant, and in certain real estate. The third clause was as follows:

"*Third.* It is mutually understood between the parties hereto, that the said parties are equally interested in the following contracts, executed either by the parties of the first and second part, or by the said Grant in his lifetime, and the said party of the second part, to the following parties, to wit: (describing fifteen contracts).

"And it is further understood and agreed that the said party of the second part is to be equally interested with said parties of the first part, as executor and executrices and as aforesaid, in the avails of any sales hereafter made of the lands now unsold of the Murray property, so called, being property deeded to Abraham P. Grant by Hamilton Murray, and being in lots 1 and 2, Hamilton's Gore, East Oswego.

"One-half of the moneys received upon the said contracts, and one-half of the money that may be received on the sale of the lands unsold and above referred to, after deducting all taxes and assessments, and all liabilities to the parties of the first part, or either of them, as executors or otherwise, and charges on said property, is to be equally divided between the parties hereto, share and share alike."

It is then provided that certain other specified real estate, the title of which was held by Grant, is the property of the party of the second part, also that the latter is to have part of a certain block without being liable to pay anything therefor, and in consideration thereof, releases to the executors a certain other portion of said block. It is also provided that "the party of the second part is to make no charge for time or services in making sales of any part of the Murray property herein referred to, or for looking after and taking care of the same."

Immediately after the execution of this agreement the executors opened an account with John W. P. Allen, containing upon the one side, entries of all moneys received by them on the joint contracts referred to in clause 3 and for sales of the Murray land as well as rents and profits of said lands between the date of the agreement and the commencement of the action, and upon the other side entries of all moneys paid out by them in connection with the property represented in the account. The referee finds that from the

date of the agreement to the commencement of the suit, the execu-
tors of the Grant estate received on joint account, under the agree-
ment, the sum of $6,154.75 ; also, certain items on a contract and
bond and mortgage not charged in joint account to the amount
of $216.76, making a total received of $6,371.51; and that the
executors, under and pursuant to said agreement, paid out on joint
account the sum of $3,881.30, leaving a balance to the credit of joint
account of $2,490.21, one-half of which, as he finds, belongs to the
plaintiff, and the other half to the defendant. From the plaintiff's
half the referee deducts the sum of $792.90 for payments received
by Allen, and this leaves a balance of $452.10, for which, with
interest, judgment is ordered in favor of plaintiff. The evidence
showed that in the entries making up the sum of $6,371.51, above
referred to, there are items for rent or income from the Murray
property, referred to in the third clause of the agreement, to the
amount of $830.75.

At the request of the defendant, it is found that on the same day
the present action was commenced, the plaintiff brought another
action against the said heirs of A. P. Grant, for the partition of the
property mentioned in clause 3 of the agreement of July 14,
1873, in which the plaintiff claimed to be a joint tenant with them
of said property, and that said last-mentioned action was based upon
said agreement of July 14, 1873 ; that said action was duly brought
to trial and a judgment rendered therein dismissing the complaint
with costs, which judgment was duly docketed in Oswego county on
June 16, 1886 ; that in said action the court held and decided that
said John W. P. Allen, under said agreement of July 14, 1873,
acquired an interest in the land contracts named in clause 3 and
an interest in the avails of sales that might thereafter be made of
the Murray property, but no direct interest in and no title whatever
to the said lands.

It also appears that on the 26th of August, 1873, John W. P. Allen
gave to Mary B. Grant his note for $185 on a business transaction
wholly outside and independent of the agreement of the 14th of
July, 1873, and for a personal matter between them. Upon this
note the administrator of Mary B. recovered a judgment against
Allen's executors, on the 28th of February, 1883, for $286.93.

By stipulation between the parties it is agreed that the only ques-

tions to be reviewed are : *First*, the plaintiff's right to rents and profits of the Murray lands, and, *second*, the right of the defendant to have the administrator of Mary B. Grant brought in as a party defendant.

*John C. Churchill* and *George W. Parkhurst*, for the appellant.

*J. B. Higgins*, for the respondent.

MERWIN, J.:

1. It is evident that by the agreement of July 14, 1873, all the controversies between the parties up to that time were designed to be adjusted. Mutual releases were given as to prior transactions. The title to a quantity of real estate had been taken by A. P. Grant, in his own name, in which Allen claimed an interest, and the agreement recognizes the fact that Allen had an interest. Divers items are declared to be the property of Allen, and as to other items Allen releases all his interest to the executors. Besides these, there remained the contracts and the Murray property, specified in the third clause of the agreement. All the contracts had been executed by Allen, together with Grant in his lifetime, or with his executors thereafter. It was declared that in these contracts Allen and the estate of Grant were equally interested. In the same connection it was stated that Allen and the estate of Grant were equally interested in the avails of any sales thereafter made of the lands then unsold of the Murray property. A division of the moneys is then provided for, "after deducting all taxes and assessments and all liabilities to the parties of the first part, or either of them, as executors or otherwise, and charges on said property." The manner of dividing the balance is not disputed. It is subsequently provided that Allen should make no charge for time or services in making sales of any part of the Murray property, or for looking after and taking care of the same. It was, therefore, contemplated not only that Allen might make sales, but would be interested in the care and management of the property, which would not ordinarily be the case unless he was also interested in the rents or income depending largely upon the care and management. It is also to be noticed that the deductions to be made from the gross amount of receipts were,

to a large extent, such as would ordinarily be first payable from the rents or income. It is hardly to be presumed that the parties intended that the estate should have credit for all the current expenses without accounting for the current income. The fact that the executors opened a joint account and entered therein as part of the joint fund the rents, is a significant circumstance on the question of the intention of the parties. If Allen was entitled to one-half of what the property sold for, no reason is apparent for excluding him from any interest in the income prior to the sale, or for giving him any different interest in the Murray property from that which he had in the land contracts. Taking all the provisions of the contract together, in the light of the surrounding circumstances, we are of the opinion that the expression "avails of any sales" was intended to include all the proceeds of the property. The finding of the referee, that the rents were received on joint account under the agreement as part of the common fund, and to be accounted for as such, should not be disturbed. It is not claimed that the judgment in the partition suit is a bar. It was between different parties.

2. The defendant claims that the administrator of Mary B. Grant is a necessary party defendant, because she, in her individual capacity, had a debt against J. W. P. Allen before the transfer under which plaintiff claims, and that such a debt, although having no connection with the property, is, or might have been held to be, within the clause of the agreement in question, which provides for the deduction of "all taxes and assessments, and all liabilities to the parties of the first part, or either of them, as executors or otherwise, and charges on said property." It was held by the referee that the liabilities there referred to included only liabilities arising out of the management of the joint estate, and did not include an individual debt to one of the executors arising out of an entirely distinct and independent transaction. This construction seems to be quite reasonable. It may well be said that the liabilities designed to be included were only those that were "charges on said property." Besides, the deductions there specified were to be made from the gross receipts before division. So that if the construction suggested by the defendant is correct, the individual debt of Allen would be paid from the gross fund, thus making the Grant estate pay one-

half of Allen's individual debt. This would seem fatal to the defendant's theory of construction.

It is not alleged or proved that the administrator of Mary B. Grant makes any claim on this fund or under the agreement. There would, therefore, be no basis for an interpleader. (*Crane* v. *McDonald*, 118 N. Y. 654.) The parties of the first part in the agreement were the executors as such. It is so alleged in the complaint and admitted by the answer. If, by virtue of some provision of the agreement, some one of the executors was to be individually benefited, it would be the case of a contract made in the name of one for the benefit of another. By section 449 of the Code, an executor or administrator, or a trustee of an express trust, may sue without joining with him the person for whose benefit the action is prosecuted. In *Mead* v. *Mitchell* (5 Abb. Pr. 106) it is said of the case of a trustee of an express trust, that "if he can sue, it follows that he may be sued, and that the *cestui que trusts* are before the court by representation."

The subject-matter of the agreement was the estate of A. P. Grant, and the property it held for the benefit of Allen. The right of action of Allen, or of his successor in interest for an accounting, was only against the executors as such. There is no controversy with the administrator of Mary B. Grant, as he makes no claim. In the absence of any such claim by him, I fail to see how he can be said to be a necessary party.

It follows that no error is apparent, and that the judgment should be affirmed.

HARDIN, P. J., and MARTIN, J., concurred.

Judgment affirmed, with costs.